**BURDICK et al. v. SNYDER et al.**
**Civil Action No. 33386.**

District Court of the United States for the District of Columbia.

Dec. 17, 1946.

Lathers & Hoag, of Duluth, Minn., and Thomas X. Dunn, of Washington, D. C., for plaintiffs.

George E. McNeil, U. S. Atty., and Daniel B. Maher, Asst. U. S. Atty., both of Washington, D. C., for defendants.

LETTS, Justice.

It appears without dispute that on October 12, 1918, fires caused much damage in northern Minnesota to the property and persons of a large number of citizens residing in the area; that the fires were caused by negligence in the operation of railroads then controlled by the United States under the Transportation Act; that the Director General of Railroads offered to settle said claims, some of which had been adjudicated and others similar in nature upon the basis of 40 and 50% of the amount of loss sustained by the respective claimants; that the claimants being in destitute circumstances and being informed that to refuse acceptance of such offer would result in separate trials of hundreds of law suits extending over many years, reluctantly accepted the offer of compromise; that thereafter judgments were entered upon stipulations as to the amount of loss sustained by each claimant, said judgments being entered for the fractional portion of the loss agreed upon according to the offer of settlement; that the claimants being aggrieved petitioned the Congress for relief; that Private Law 336 was enacted in the 74th Congress and approved by the President on August 27, 1935, 49 Stat. 2194, by the terms of which the balance of the loss sustained by the several claimants was authorized to be paid. The majority of the claimants were represented by these plaintiffs from the time of the fire to the enactment of the Private Law; Private Law 336 authorized the assignment in whole or in part of the fire claims and authorized an attorney's fee in the sum of 10%; the claimants represented by these plaintiffs executed assignments in the sum of 10% of their claims payable to these plaintiffs as attorneys' fees; such assignments have been recognized as valid by the General Accounting Office.

It further appears without dispute that each of the several claimants presented proofs of claim through these plaintiffs to the Comptroller General; that the Comptroller General allowed said claims and directed payment thereof by the issuance of two checks, each made payable to the claimant, one check being for 90% of the claim to be delivered to the claimant and one check for 10% made payable to the claimant but to be delivered to these plaintiffs; that thereafter checks were drawn by the Treasurer of the United States as authorized by the Comptroller General; that the checks here in issue were made payable to the several claimants for 10% of the amount of their claims and were sent to plaintiffs as payment of their compensation for professional services rendered to the several claimants; that the checks have been presented to the various claimants who have failed, refused and neglected to indorse same; that some of the claimants could not be located; that plaintiffs have not been paid for their services; that the checks here in issue were presented to the Secretary of the Treasury for payment but payment has been refused.

This suit is for a mandatory injunction to require the Comptroller General to authorize the Secretary of the Treasury to pay the amounts represented by the checks in suit and to require the Secretary of the Treasury to make payment thereof to the plaintiffs. The matter comes before the court on the motion of plaintiffs for summary judgment.

The defendants have answered setting up several defenses, all of which are considered to be without merit. Payment is authorized and directed by Private Law 336; the claimants have been identified by the General Accounting Office; the amount due each claimant has been determined by that office; checks have been drawn covering the claims in issue; the assignment is valid and so recognized by the General Accounting Office. Nothing remains to be done but to authorize payment to the plaintiffs; the matter of payment does not involve judgment and discretion; the duty is ministerial. The answers suggest that there is an adequate remedy at law in that these plaintiffs can sue the claimants and require them to indorse the checks which plaintiffs hold or to invoke the aid of the court through appropriate procedure to secure endorsement of the checks satisfactory to the Secretary of the Treasury. The remedy so suggested would be inequitable in the circumstances of the instant case. There are a large number of checks in suit, in amount they range from $1.20 to as much as $600; many of the claimants are not to be found. It is unthinkable that plaintiffs in order to secure the compensation which has long been due them should be required to bear the burden and costs of instituting separate suits in the State courts for the small amounts covered by the checks in suit. It seems likely that in many cases service could be had only by publication. The costs of receiverships or other proceedings by which a court might authorize an official of the court to indorse the checks would be entirely out of proportion to the amounts which would be realized when the checks are finally paid. To adopt the suggestion would run counter to the well known principle that equity will seek to avoid a multiplicity of suits. It is thought likely that the dilemma in which these plaintiffs find themselves has resulted from the application of an age old practice in the General Accounting Office to require claimants as well as assignees to indorse checks issued in payment of Government obligations. Such practice would not be oppressive in the usual instant where the claimant would willingly join his assignee in making the desired endorsement. As applied to the facts of this case it seems that resort to such practice is so burdensome that it amounts to a denial of justice in that it simulates a refusal to pay just obligations of the United States. Furthermore, the assignments which have been filed with the Comptroller General give full acquittance to the United States. Since none of the assignments have been revoked their validity should be fully recognized and payment should be made accordingly as is directed by Private Law 336.

Counsel for plaintiffs will present an order sustaining the motion for summary judgment.